## Seem v. Henry.

*George M. Lutz*, for plaintiff; *John L. Cutshall*, for defendant.

RENO, P. J., March 24, 1930.—William H. Seem filed a bill in equity, alleging that W. R. Henry, for the purpose of securing water power to operate his grist mill, keeps and maintains a dam near the William H. Seem

boundary line across the natural channel of the Little Lehigh River, which obstructs the natural flow of the water of the Little Lehigh River and dams it to such a height as to overflow its banks, thereby hindering and delaying plaintiff in harvesting his crops with teams and machinery and injuring said crops. He prays for equitable relief as follows: (1) That the defendant be decreed to raise said dam; (2) that the defendant be enjoined to further obstruct the waters of the Little Lehigh River; (3) for such other and further relief as the plaintiff may be entitled to; (4) for general relief.

The defendant, by his answer, admits that he maintains a dam which obstructs the natural flow of the waters of the Little Lehigh River, but he denies that the waters of the Little Lehigh River overflow the banks of the stream upon plaintiff's land except during freshets and flood seasons. He avers that the original dam for the mill property which he now owns was erected more than one hundred years ago; that the present dam, as it now stands, was erected during July and August, 1890; that the present dam is of the same width and the same height (except that about three inches have been removed from the top thereof) as it was when it was erected in July and August, 1890; and that by reason of the maintaining of the dam in the same way and manner, and for the same uses and purposes, and of the same width and height, in an open and hostile manner, said use by himself and his predecessors in title has ripened into an easement in defendant's favor. He contends that a presumption of a grant to this easement has arisen in his favor and that, therefore, he is within his rights in maintaining the dam.

Considerable testimony has been taken and upon it are based the following findings of fact and conclusions of law.

### Findings of fact.

1. Plaintiff owns a farm of approximately 109 acres in Lower Macungie Township, Lehigh County, adjoining which is defendant's land on which a grist mill is located.

2. The grist mill is operated by the water power of the Little Lehigh Creek, obtained by obstructing the creek with a dam.

3. The dam has been maintained on the present site for many years, possibly a hundred years, certainly longer than the memory of the oldest living witness, and was rebuilt during July and August, 1890.

4. The dam is now of the same width and height as erected in 1890, except that (a) in 1901 the spillway was reduced by a fraction of an inch and (b) in 1927 about four inches were removed from the top of the spillway.

5. The defendant and his predecessors in title have used and operated the dam for a period of more than twenty-one years, and the use has been open, notorious, continuous, hostile, exclusive, under a claim of right and with the knowledge and acquiescence of plaintiff.

6. The lands of plaintiff (who is the upper riparian owner) are, by reason of the use and operation of the dam, flooded to such an extent that certain parts thereof cannot be cultivated and harvested, but they are not flooded to a greater extent than they have been for the past fifty or sixty years.

7. Neither defendant nor his predecessors in title have abandoned their right to use, operate or maintain the dam, although at times, particularly during the period from 1922 to 1927, the mill was not operated continuously or to its full capacity.

8. There have been disputes concerning defendant's right, or that of his predecessors, to maintain the dam, but such disputes have occurred since the completion of the twenty-one-year period.

9. The removal of portions of the top of the spillway, referred to in paragraph 4 hereof, was not in recognition of any rights claimed by plaintiff, but in order that defendant and his predecessors in title might maintain peaceable relations with his neighbor.

10. The removal at times by defendant and his predecessors in title of boards of the spillway was not a recognition by them of any right in plaintiff but the request was granted as a neighborly act.

### Discussion.

The case does not require lengthy discussion. There is considerable testimony, but the facts are easily ascertained. The heart of the case is the circumstance that the dam has been used and operated for many years. As far back as the year 1800 defendant's property has been described as a "mill property." This suggests, if it does not imply, the maintenance of a dam across the Little Lehigh River. At all events, there was a dam at the point of the one now in controversy for many years beyond the memory of living witnesses. However, since defendant is satisfied to base his claim upon the dam as it was rebuilt in July or August, 1890, it is unnecessary to adjudicate this case upon the basis of the older dam. The newer dam—the one now in controversy—was, as we have said, erected in 1890, almost forty years ago. It has remained in substantially the same condition all these years, except *(a)* that in 1901 a fraction of an inch of the height of the spillway was removed to make it conform to the older dam and *(b)* that in 1927, upon the advice of Preston M. Bastian, a justice of the peace and surveyor, for the purpose of restoring good-will in the neighborhood, the spillway was again lowered by removing three inches from its top.

These facts being incontrovertibly true, it is difficult to understand how plaintiff's lands could have suffered an enlargement of the flooded area. "As long as the dam structure is of the same height, it may be assumed, in most cases at least, that the water is held to the same general level and the extent of the land flooded from time to time is the same:" McGeorge *v.* Hoffman, 133 Pa. 381, 398. As a matter of fact, plaintiff himself testifies that the water has been swelled back upon his lands for many years, not only while defendant operated the mill, but also while defendant's predecessors in title occupied it. So that the extent to which waters are flooding his fields is now not greater than in the past. Indeed, if there has been any change, the flooded area must have been reduced by the lowering of the spillway. Certainly, it cannot have been increased by piling of the debris of the channel of the stream upon its banks, for the channel was not thereby narrowed.

Defendant's right to obstruct the stream is based, not upon a deed but upon prescription, upon the presumption arising out of the continued maintenance of the dam that a grant was made. Naturally, the burden of establishing a prescription is upon him who asserts it, and defendant has, we think, abundantly shown an uninterrupted adverse enjoyment for more than twenty-one years: Garrett *v.* Jackson, 20 Pa. 331. True, there have been disputes concerning the right to operate the dam, but they occurred in 1912 or 1913, after the twenty-one years had run. "The owner of the land has the burden of proving that the use of the easement was under some license, indulgence or special contract inconsistent with a claim of right by the other party:" Garrett *v.* Jackson, *supra*. Unquestionably, if the owner of the servient tenement resists such claim or opposes the use it will negative the claim. Whether a mere verbal objection to the use is valid or must be in the form of an action at law is open to question. Workman *v.* Curran, 89 Pa. 226, holds that it is

not at all necessary that the owner of the servient tenement shall enter suit to prevent the completion of the prescriptive period, although an action is necessary to prevent the running of the statute in a case of adverse possession. On the other hand, in McGeorge v. Hoffman, supra, the Supreme Court seems to have approved an instruction to the effect that "a mere battle of words" is not enough, "it must be more than that," "you must bring your action." The Superior Court seems to follow the latter rule: Hudson v. Watson, 5 Pa. Superior Ct. 456. But since the disputes occurred after the completion of the twenty-one-year period, it is not necessary to determine the true rule.

### Conclusions of law.

1. The lands, dam and mill property of the defendant are the dominant tenement.

2. The lands of the plaintiff adjoining those of the defendant are the servient tenement.

3. The defendant has acquired the right to dam the water of the Little Lehigh by prescription, having done so for a period of more than twenty-one years.

4. Proof of an uninterrupted use for the prescriptive period of twenty-one years, without evidence to explain how it began, raises a presumption that it was adverse and under a claim of right.

5. The owner of the servient tenement cannot overcome the presumption of right arising from an uninterrupted user for the prescriptive period by proof that no grant was in fact made.

6. In order to overcome the presumption, the owner of the servient tenement must show that the user was without his knowledge.

7. If the owner of the servient tenement relies on the fact that the user was by virtue of some license, indulgence or agreement inconsistent with the right claimed, the burden is on him to prove this fact.

8. The prescriptive period in Pennsylvania is twenty-one years.

9. An easement acquired by prescription stands in all respects on the same footing as easements by grant.

10. One who purchases land with notice, actual or constructive, that it is burdened with an existing easement takes the estate subject to the easement.

11. Where the use of the easement is open and visible, the purchaser of the servient tenement will be charged with notice of such easement.

12. An easement of flowage may be lost by reason of an adverse and inconsistent user by the owner of the land subject thereto for the prescriptive period; but mere non-user for less than the statutory period of a limitation does not extinguish the easement.

13. A prescriptive right to maintain a right and flow land once acquired is absolute and cannot be lost or prejudiced by any acknowledgment on the part of the possessor.

14. When the plaintiff acquired title to his farm adjoining lands of the defendant, he took it subject to whatever back-flow or obstruction of water the dam of the defendant occasioned and must enjoy his land as he took it, subject to have just so much of it overflowed (if any) as the dam and other natural peculiarities of the stream below his lines caused to be overflowed.

15. The spillway and flood gate of the dam of the defendant, being that part of the breast of the dam over which the water flows, determines that extent to which the waters in the reservoir of the dam are raised or flooded back.

494

16. The plaintiff is not entitled to relief and his bill must be dismissed. Costs to be paid by plaintiff.

*Decree nisi.*

Now, March 24, 1930, it is ordered that the foregoing findings of fact and conclusions of law be filed and that the prothonotary enter this order as a decree *nisi*, giving notice thereof to the parties or their counsel, and if no exceptions are filed thereto within ten days the prothonotary shall enter the same as a final decree.

From Edwin L. Kohler, Allentown, Pa.